UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                            Case Number 15-20743
v.                                         Honorable David M. Lawson

DUANE LETROY BERRY,

        Defendant.

_____/

**ORDER OF COMMITMENT TO ATTORNEY GENERAL UPON FINDING
DEFENDANT NOT COMPETENT TO STAND TRIAL**

The Court held a hearing on August 25, 2016 under 18 U.S.C. §§ 4241(c), 4247(d) to determine the defendant's competency to stand trial. The hearing was held after the Court had granted the government's oral motion for a court order directing that the defendant be referred for an examination to determine his competency to stand trial and to represent himself. After inquiry by the Court on the record, the Court had determined that there was reasonable cause to believe that the defendant may be suffering from a mental disease or defect that may render him incompetent to stand trial within the meaning of 18 U.S.C. § 4241(a) & (d). As a result, the Court directed that a competency examination take place, and the defendant was examined by Bureau of Prisons forensic psychologist Christine Scronce, Ph.D. at the Metropolitan Corrections Center in Chicago, Illinois, who submitted a report conforming to 18 U.S.C. § 4247(c). The defendant's attorney, Craig Daly, moved for an examination by a mental health professional of the defendant's choice, and the Court authorized an examination by psychologist Jack P. Haynes, Ph.D, who attempted to examine the defendant and submitted a report. Both Dr. Scronce and Dr. Haynes testified at the hearing. The

defendant was offered the opportunity to testify, but he declined. He did, however, pose questions to Dr. Scronce through his attorney.

The defendant was charged in an indictment filed on November 19, 2015 with perpetrating false information and hoaxes in violation of 18 U.S.C. § 1038(a). In its rather opaque language, the grand jury charged that Berry "did knowingly engage in conduct with the intent to convey false and misleading information under circumstances where such information may reasonably be believed and where such information indicated that an activity had taken place, was taking place, and would take place that would constitute a violation of chapter 40 of Title 18 of the United States Code." Indictment at 1. In other filings, the government has explained that the charge is based on evidence that on November 6, 2015, Berry left a briefcase made to look like a bomb outside of the Guardian Building in downtown Detroit, where a Bank of America office was located. The device was not a bomb, but the government believes that Berry planted the device in an effort to pursue a dispute he has with the Bank of America. According to Berry's other filings and statements he made to Dr. Scronce, Berry believes that he is the "primary Trustee" of a trust that owns "every Bank of America branch and asset around the world," and he is responsible for "repossession" of those assets. In the days leading up to this event, Bank of America branches around the metro Detroit area had been vandalized. The vandalism ranged from spraying ATMs with glue or paint to marking financial center entrances with a big X. All of the vandalism appeared to be committed by the same perpetrator. One of Berry's relatives allegedly told a Bank of America employee that Berry had been responsible for the vandalism. That behavior was consistent with Berry's stated objectives, which, as he explained to Dr. Scronce, was to "repossess the Bank of America in a stealth manner."

At the hearing, Dr. Scronce testified that Berry suffered from Delusional Disorder, Mixed Type, First Episode, which currently is an acute episode. She explained that the defendant's thinking is affected by his paranoid ideation, evidenced by the belief that the Department of Treasury and the Bank of America are colluding to prosecute him because of the effect he could have on the world economy. She said that his mental illness affects his competency to understand the charges and assist in a rational defense because his perception is based on delusional ideas. Dr. Scronce also explained that Berry cannot assist his lawyer in defending against the charges because there is no rational basis for a defense rooted in delusions. She opined that without medication or treatment, the defendant had very little likelihood of regaining competence.

Dr. Haynes testified that after he was engaged by the defense to examine Berry, he made arrangements to see him at the Sanilac County jail on July 20, 2016, where Berry was detained pending trial in this case. He was not able to conduct the examination, however, because Berry refused to leave his cell. Dr. Haynes waited for a period of time and was allowed to go to the cell. When Berry saw him in a common area, however, he shook his head, turned around, and went back to his cell. Dr. Haynes discontinued his attempt to examine the defendant.

A criminal defendant is not competent to stand trial if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). The Court finds that it is more likely than not that defendant Berry suffers from Delusional Disorder, Mixed Type, which is a mental disease recognized by the *Diagnostic and Statistical Manual of Mental Disorders* (5th ed.). Although it is possible and perhaps likely that Berry understands the nature of the proceedings against him, it is

abundantly clear that he cannot assist properly in his defense. To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and . . . a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). As Dr. Scronce explained, someone with a delusional disorder may be highly functional and actually appear "normal" in casual conversation. But the anchor to reality becomes unmoored when the discussion turns to the object of his delusion, a phenomenon that the defendant has exhibited in this case. And there can be no rational basis for a defense (e.g., that the defendant was entitled to "repossess" Bank of America assets "by stealth" and therefore was justified in his actions) that is rooted in delusional ideas. The defendant, therefore, is presently mentally incompetent to stand trial.

A criminal defendant cannot be tried unless he is mentally competent. *Godinez v Moran*, 509 U.S. 389, 396 (1993). A defendant found incompetent to stand trial must be "commit[ted] . . . to the custody of the Attorney General . . . [to be] hospitalize[d] . . . for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d).

Accordingly, it is **ORDERED** that defendant Duane Letroy Berry is committed to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

It is further **ORDERED** that during the defendant's hospitalization, he will be provided the opportunity for treatment in an appropriate manner as prescribed by a mental health professional.

It is further **ORDERED** that the director of the facility in which the defendant is hospitalized shall report to the Court no later than **November 30, 2016** on the defendant's condition, specifically addressing whether the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense. If, in the opinion of the director or his or her designate, the defendant has not recovered, the government must move for a hearing to determine whether the defendant should be confined for an additional reasonable period of time until his mental condition is so improved that trial may proceed and that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward.

It is further **ORDERED** that when the director of the facility in which the defendant is hospitalized determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, that director shall promptly file a certificate to that effect with the clerk of this Court. The Court will then conduct a hearing under 18 U.S.C. § 4247(d) to determine the competency of the defendant.

It is further **ORDERED** that the United States Marshal's Service shall transport the defendant to and from the Federal Medical Facility designated by the Bureau of Prisons for the purpose of the confinement and treatment.

It is further **ORDERED** that the period beginning on August 24, 2016, and ending with the conclusion of the competency hearing held under 18 U.S.C. §§ 4241 and 4247, is deemed excludable

under the Speedy Trial Act pursuant to 18 U.S.C. §§ 3161(h)(1)(F) and (h)(1)(A) and shall not be counted against the 70-day time limit established for bringing the defendant to trial.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 30, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 30, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI