UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                        Case Number 15-20743

v.                                                            Honorable David M. Lawson

DUANE LETROY BERRY,

       Defendant.
_____/

## **SECOND ORDER OF COMMITMENT TO ATTORNEY GENERAL UPON FINDING DEFENDANT NOT COMPETENT TO STAND TRIAL**

This case came back before the Court on the government's motion to refer the defendant for a civil commitment evaluation. However, before addressing that motion, the Court determined that a fresh competency evaluation should be held. The Court ordered the government to transfer the defendant to a Bureau of Prisons (BOP) facility for an evaluation. The defendant was examined by BOP forensic psychologist Danielle Powers, Ph.D. at the Federal Medical Center in Fort Worth, Texas. Dr. Powers submitted a report conforming to 18 U.S.C. § 4647(c).

Defendant Duane Berry stands charged in an indictment with perpetrating false information and hoaxes in violation of 18 U.S.C. § 1038(a). The charge is based on evidence that on November 6, 2015, Berry left a briefcase made to look like a bomb outside of the Guardian Building in downtown Detroit, where a Bank of America office was located. The device was not a bomb, but the government believes that Berry planted the device in an effort to pursue a dispute he has with the Bank of America. According to Berry's other filings and statements he made to a BOP psychologist during an earlier examination, Berry believes that he is the "primary trustee" of a trust that owns "every Bank of America branch and asset around the world," and he is responsible for "repossession" of those assets. In the days leading up to this event, Bank of America branches

around the metro Detroit area had been vandalized. The vandalism ranged from spraying ATMs with glue or paint to marking financial center entrances with a big X. All of the vandalism appeared to be committed by the same perpetrator. One of Berry's relatives allegedly told a Bank of America employee that Berry had been responsible for the vandalism. That behavior was consistent with Berry's stated objectives, which, as he explained to Dr. Christine Scronce, a forensic psychologist located at the Metropolitan Correctional Center in Chicago, Illinois, was to "repossess the Bank of America in a stealth manner."

The Court granted an earlier motion for a competency examination. After an evaluation by a BOP psychologist, the Court held a hearing on August 25, 2016 under 18 U.S.C. §§ 4241(c), 4247(d) and determined that Berry was incompetent to stand trial. Based on that finding, the Court ordered that Berry be committed to the custody of the Attorney General for a period no longer than four months to determine whether there was a substantial probability that he would attain the capacity to permit the proceedings to go forward in the foreseeable future. *See* ECF No. 45. The Court also ordered the director of the facility where Berry was hospitalized to report on Berry's condition by November 30, 2016. Berry was subsequently admitted to the Mental Health Unit at the FMC Butner on October 3, 2016, and upon the director's request, Berry's evaluation period was extended through January 30, 2017. *See* ECF No. 52.

Berry's evaluators at FMC Butner reported that Berry remained incompetent to stand trial, and that he would benefit from anti-psychotic medication. But Berry refused to voluntarily accept treatment. On January 9, 2017, the Court directed the parties to submit supplemental briefs addressing the issue of whether involuntary treatment was appropriate under *Sell v. United States*, 539 U.S. 166 (2003). *See* ECF No. 56. The Court held a hearing on the first *Sell* factor on February 15, 2017, and upon finding that the government established that it has an important interest in

continuing Berry's prosecution, the Court held an evidentiary hearing on the other three factors on June 1, 2017. On August 31, 2017, the Court authorized the administration of medication. *See United States v. Berry*, 276 F. Supp. 3d 740 (E.D. Mich. 2017). The Sixth Circuit reversed the decision on December 19, 2018. *See United States v. Berry*, 911 F.3d 354 ( 6th Cir. 2018). The defendant never received medication.

FMC Butner did not continue to treat Berry, and on March 24, 2017 Berry was transferred to U.S. Marshal custody and lodged as a pretrial detainee at Midland County Jail in Michigan, where he remained until June 15, 2017. Since then, Berry was moved in and out of federal custody to face state charges in two criminal cases. Although the defendant's competency had been raised in those matters, the defendant had not been evaluated for competence in this case since he was released from FMC Butner and there was no indication from any other detention facilities that Berry had been treated for his psychosis. The Court has not received any reports on Berry's mental condition that were prepared at FMC Butner in advance of his discharge. *See* 18 U.S.C. § 4247(e)(1)(A).

Earlier this year, the government filed a motion to dismiss the indictment and a motion to refer Berry for a civil commitment evaluation under 18 U.S.C. § 4246. The Court heard oral argument on those motions on May 2, 2019. Because of the significant passage of time since the defendant's last competency evaluation, the Court took the government's motions under advisement and referred the defendant for another competency evaluation.

On August 21, 2019, the Court held a second competency hearing under 18 U.S.C. §§ 4241(c), 4247(d). Dr. Danielle Powers testified at the second hearing. The defendant was offered the opportunity to testify but declined. He did, however, pose questions to Dr. Powers through his attorney. Dr. Powers testified that Berry continued to suffered from a delusional disorder. She

explained that the defendant's thinking is affected by his paranoid ideation, evidenced by the belief that the Department of Treasury and Bank of America are colluding to prosecute him because of the effect he could have on the world economy. She said that his mental illness affects his competency to assist in his defense because there is no rational basis for a defense rooted in delusions — for instance, believing that the charges will be dropped because "he has a financial relationship with the judge."

A criminal defendant is not competent to stand trial if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). The Court finds that it is more likely than not that defendant Berry still suffers from a delusional disorder, mixed type, which is a mental disease recognized by the *Diagnostic and Statistical Manual of Mental Disorders* (5th ed.). Although it is possible and perhaps likely that Berry understands the nature of the proceedings against him, it is abundantly clear that he cannot assist properly in his defense. To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and . . . a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). As Dr. Powers explained, someone with a delusional disorder may be highly functional and appear "normal" in casual conversation. But the anchor to reality becomes unmoored when the discussion turns to the object of his delusion, a phenomenon that the defendant has exhibited in this case. And there can be no rational basis for a defense (e.g., that the defendant was entitled to "repossess" Bank of America assets "by stealth" and therefore was justified in his actions) that is rooted in delusional ideas. The defendant, therefore, is presently mentally incompetent to stand trial.

A criminal defendant cannot be tried unless he is mentally competent. *Godinez v Moran*, 509 U.S. 389, 396 (1993). A defendant found incompetent to stand trial must be "commit[ted] . . . to the custody of the Attorney General . . . [to be] hospitalize[d] . . . for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d).

Accordingly, it is **ORDERED** that defendant Duane Letroy Berry is committed to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

It is further **ORDERED** that during the defendant's hospitalization, he will be provided the opportunity for treatment in an appropriate manner as prescribed by a mental health professional.

It is further **ORDERED** that when the director of the facility in which the defendant is hospitalized determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, that director shall promptly file a certificate to that effect with the clerk of this Court. The Court will then conduct a hearing under 18 U.S.C. § 4247(d) to determine the competency of the defendant.

It is further **ORDERED** that the United States Marshal's Service shall transport the defendant to and from the Federal Medical Facility designated by the Bureau of Prisons for confinement and treatment.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Date:   September 6, 2019

**PROOF OF SERVICE**

> The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on September 6, 2019.
>
> s/Susan K. Pinkowski<br>
> SUSAN K. PINKOWSKI