UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                        Case Number 15-20743

v.                                                         Honorable David M. Lawson

DUANE LETROY BERRY,

       Defendant.

_____/

## ORDER GRANTING MOTIONS TO DISMISS AND TO REFER DEFENDANT FOR A CIVIL COMMITMENT EVALUATION

This matter is before the Court on the government's motions to dismiss the case and to refer the defendant for a civil commitment determination under 18 U.S.C. § 4146(a).

Defendant Duane Berry stands charged in an indictment with perpetrating false information and hoaxes in violation of 18 U.S.C. § 1038(a). The charge is based on evidence that on November 6, 2015, Berry left a briefcase made to look like a bomb outside of the Guardian Building in Detroit, Michigan, where a Bank of America office was located. The device was not a bomb, but the government believes that Berry planted the device to pursue a dispute he has with the Bank of America. According to Berry's other filings and statements he made to a BOP psychologist during earlier examinations, Berry believes that he is the "primary trustee" of a trust that owns "every Bank of America branch and asset around the world," and he is responsible for "repossession" of those assets. In the days leading up to this event, Bank of America branches around the Metropolitan Detroit area had been vandalized. The vandalism ranged from spraying ATMs with glue or paint to marking financial center entrances with a big X. All of the vandalism appeared to be committed by the same perpetrator. One of Berry's relatives allegedly told a Bank of America employee that Berry had been responsible for the vandalism. That behavior was consistent with

Berry's stated objective, which, as he explained to Dr. Christine Scronce, a Bureau of Prisons psychologist, was to "repossess the Bank of America in a stealth manner."

The Court granted an earlier motion for a competency examination. After an evaluation by Dr. Scronce, the Court held a hearing on August 25, 2016 under 18 U.S.C. §§ 4241(c), 4247(d) and determined that Berry was incompetent to stand trial. Based on that finding, the Court ordered that Berry be committed to the custody of the Attorney General for a period no longer than four months to determine whether there was a substantial probability that he would attain the capacity to permit the proceedings to go forward in the foreseeable future. *See* ECF No. 45. The Court also ordered the director of the facility where Berry was hospitalized to report on Berry's condition by November 30, 2016. Berry subsequently was admitted to the Mental Health Unit at the Federal Medical Center in Butner, North Carolina ("FMC Butner") on October 3, 2016. Upon the director's request, Berry's evaluation period was extended through January 30, 2017. *See* ECF No. 52.

Berry's evaluators at FMC Butner reported that Berry remained incompetent to stand trial, and he would benefit from anti-psychotic medication. But Berry refused to accept treatment voluntarily. On January 9, 2017, the Court directed the parties to submit briefs addressing the issue of whether involuntary treatment was appropriate under *Sell v. United States*, 539 U.S. 166 (2003). The Court held a hearing on the first *Sell* factor on February 15, 2017, and upon finding that the government established that it has an important interest in continuing Berry's prosecution, the Court held an evidentiary hearing on the other three factors on June 1, 2017. On August 31, 2017, the Court authorized the involuntary administration of medication. *United States v. Berry*, 276 F. Supp. 3d 740, 749-50 (E.D. Mich. 2017), *rev'd* 911 F.3d 354 (6th Cir. 2018). The Sixth

Circuit reversed the decision on December 19, 2018. *United States v. Berry*, 911 F.3d 354 (6th Cir. 2018). The defendant never received medication.

FMC Butner did not continue to treat Berry; on March 24, 2017, Berry was transferred to U.S. Marshal custody and lodged as a pretrial detainee at Midland County Jail in Midland, Michigan, where he remained until June 15, 2017. After that date, Berry was moved in and out of federal custody to face state charges in two criminal cases. Berry had been charged on November 3, 2015 with malicious destruction of a building, and he previously was charged with criminal sexual conduct and kidnapping on July 4, 2008. The defendant's competency had been questioned in those matters; Berry underwent competency evaluations as to both sets of charges between July 2017 and August 2018. However, the competency determinations were inconsistent. According to the competency evaluation report dated November 29, 2018, Berry "appear[ed] to have a delusional belief system related to Bank of America and the Federal Reserve." ECF No. 166-3, PageID.4661. However, the examiner concluded that Berry was competent to stand trial because he "did not express any delusional beliefs during the instant examination and was able to remain focused on the questions asked of him and respond in a relevant and coherent manner." *Ibid.* The state court found Berry competent in that case; but the state court found him incompetent to stand trial in the criminal sexual misconduct/kidnapping case.

Although the defendant's competency had been raised in those matters, the defendant had not been evaluated for competence in this case since he was released from FMC Butner, and there was no indication from any other detention facilities that Berry had been treated for his psychosis. The Court had not received any reports on Berry's mental condition that were prepared at FMC Butner in advance of his discharge, which the statute would seem to contemplate. *See* 18 U.S.C. § 4247(e)(1)(A).

The government filed its motions to dismiss the indictment and to refer Berry for a civil commitment examination on February 15, 2019.  Berry was not in a BOP facility at the time, and the Court expressed concern over the odd competency reports, which could have been stale.  The Court therefore ordered a new examination by the BOP under 18 U.S.C. § 4243(b).

After the examination was completed, the Court held a second competency hearing under 18 U.S.C. §§ 4241(c), 4247(d) on August 21, 2019.  Dr. Danielle Powers testified at the second hearing.  The defendant was offered the opportunity to testify but declined.  He did, however, pose questions to Dr. Powers through his attorney. Dr. Powers testified that Berry continued to suffer from a delusional disorder.  She explained that the defendant's thinking is affected by his paranoid ideation, evidenced by the belief that the Department of Treasury and Bank of America are colluding to prosecute him because of the effect he could have on the world economy.  She testified that his mental illness affects his competency to assist in his defense because there is no rational basis for a defense rooted in delusions — for instance, believing that the charges will be dropped because "he has a financial relationship with the judge."  The Court found that it was more likely than not that the defendant still suffered from a delusional disorder and that he could not assist properly in his defense.  Thereafter, the Court ordered that the defendant be committed to the custody of the Attorney General to determine whether there is a substantial probability that in the foreseeable future he would attain the capacity to permit the proceedings to go forward.  Berry was then transferred to the Federal Medical Center in Fort Worth, Texas for treatment under 18 U.S.C. § 4241(d).

The government argues in its motion to dismiss that Berry has been found incompetent to stand trial and (without treatment) cannot be restored to competency.  The Court agrees.  If Berry will not agree to treatment, and the court of appeals will not permit involuntary treatment, there is

little possibility that the *status quo* will change. No one disputes the well-established premise that "a criminal defendant may not be tried unless he is competent." *Pate v. Robinson,* 383 U.S. 375, 378, (1966). Likewise, he cannot waive his right to counsel or plead guilty unless he does so "competently and intelligently." *Johnson v. Zerbst,* 304 U.S. 458, 468, (1938); *accord Brady v. United States*, 397 U.S. 742, 758, (1970); *see also Godinez v. Moran,* 509 U.S. 389 (1993) (holding that the standard of competency for pleading guilty or waiving right to counsel is the same as the competency standard for standing trial). Dismissal of the indictment on the government's motion, therefore, is appropriate.

When a defendant's case is dismissed but the defendant has not been restored to competency, consideration of civil commitment is called for. 18 U.S.C. § 4241(d) ("If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248."); 18 U.S.C. 4246(a) (outlining the procedure for civil commitment of such a defendant). The Sixth Circuit seemed to be of that mind when it noted in its earlier opinion that "[a]lthough Berry is not a danger to other individuals under current conditions, we believe that there is a strong likelihood, given Berry's predilections regarding Bank of America, that a court will find that Berry's release, in an untreated state, would 'create a substantial risk . . . of serious damage to property of another . . .'" *Berry*, 911 F.3d at 365-66.

The Court concurs with that observation. Berry still suffers from a delusional disorder. He has been found incompetent to stand trial by this Court and at least one other state court. His delusion appears to have propelled him to engage in acts of vandalism and threatening conduct against the object of his delusion. He also is accused of acts of sexual violence in the past. And he still refuses treatment for his psychotic disorder.

Berry presently is in BOP custody and now "all charges [against him] have been dismissed solely for reasons relating to [his] mental condition." 18 U.S.C. § 4246(a). The Court is satisfied with the government's showing that "his release would create a substantial risk of . . . serious damage to the property of another," *ibid.,* and possibly to another person. Therefore, it is appropriate that Berry be evaluated for civil commitment, and that a hearing on that question be held in the district where Berry is presently lodged in the BOP facility. *See* 18 U.S.C. § 4246(c).

Accordingly, it is **ORDERED** the government's motion to dismiss the indictment (ECF No. 142) is **GRANTED**.

It is further **ORDERED** that the government's motion to refer the defendant for a civil commitment determination 18 U.S.C. § 4246(a) (ECF No. 143) is **GRANTED**.

It is further **ORDERED** that all other pending motions (ECF No. 17, 23, 36, 53, 61, 120, 141, 176, 189) are **DISMISSED as moot**.

It is further **ORDERED** that the government must serve a copy of this order upon the warden of the BOP facility currently having custody of defendant Berry **forthwith**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   December 17, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on December 17, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI